### BEDELL V. BEDELL.

*Rescission — of contract for fraud — party seeking, must restore avails.*

Plaintiff and her sister, under the will of their mother, received the mother's entire estate, the brothers of plaintiff receiving nothing. The brothers threatened to contest the will, and stated to plaintiff that the mother's family physician had told them that the mother was insane when she made it. This was untrue, but plaintiff was induced to transfer to them certain securities belonging to the estate, in consideration of which they withdrew their opposition, and the will was admitted to probate. Plaintiff then brought action to rescind the transfer for fraud. *Held* (BARNARD, P. J., dissenting), that not being able to restore the brothers to the position they occupied before the transfer, so as to enable them to contest the will, plaintiff could not be allowed to rescind her contract.

APPEAL by defendants from a judgment in favor of plaintiff, entered upon the decision of the court at special term.

The action was brought by Emma A. Bedell against Charles W. Bedell and another to compel a re-assignment of certain mortgages to plaintiff, which were alleged to have been assigned by plaintiff under a misapprehension as to the validity of a will, resulting from false statements of defendants, and for an accounting. The facts appear in the opinion.

*E. More*, for appellant.

*C. M. Benson* and *D. P. Barnard*, for respondents.

Present — BARNARD, P. J., TAPPEN and DONOHUE, JJ.

TAPPEN, J.   This is an appeal from a judgment in favor of the plaintiff, on a trial at the Kings special term.

The plaintiff sought to set aside certain assignments of mortgages, which assignments she had made to the defendants, alleging them to have been without consideration, and to have been obtained from her by false and fraudulent statements on the part of the defendants.

The plaintiff is sister to the defendants.   Their mother, Lydia Bedell, died on the 20th of December, 1871, leaving a will whereby her property was given to the plaintiff and to Louisa, the plaintiff's sister, to the exclusion of the brothers.   These brothers (being the defendants in this action) threatened to contest the will on the ground of the incapacity of the testatrix, by reason of alleged insanity; and the mortgages were assigned to them after proof of the will, to carry out an agreement of settlement, whereby they withdrew all opposition.   The plaintiff consulted several family friends, and they told her the matter of settlement with her brothers had better be arranged among themselves.   She testifies that one of the friends seemed inclined to think she ought to divide with the brothers.   Her sister Louisa does not contest the settlement; she participated therein, and is satisfied therewith.   She testifies that she was willing from the first, and that she thinks her sister, the plaintiff, did it voluntarily of her own free will.

The attending physician testifies that he never stated to the defendants that their mother was insane; the assertion that he did so state is testified by the plaintiff to have been made to her by the defendants and to have influenced her in consenting to the settlement which she now seeks to revoke.   Her sister Louisa testifies that the defendants' talk about their mother's insanity did not make her believe that she was insane; that Emma, the plaintiff, said she was not insane, and that defendants could not break the will.

The plaintiff had abundant opportunity to know every fact bearing on the question of her mother's capacity; the brothers and sisters dwelt with their mother as one family, under the same roof, long before the mother's death, and at the time thereof and for some time thereafter.

A brief review of the circumstances attending the making of the will shows activity and secrecy on the part of the plaintiff; the making of the will and the death of the testatrix appear to have happened on the same day, the 20th December, 1871.   A lawyer

was sent for by request of testatrix; the plaintiff says her sister Louisa carried the message. Louisa says she did not. The brothers had a place of business two blocks off, but they were not summoned. Three days afterward one of them asked plaintiff if their mother had not made a will, and she told them "she did not know any thing about it." They seem to have ascertained the fact at the surrogate's office, by the usual citations, or in some other way. The will was proved on the 19th of January, 1872; the opposition to the will was pending for some time previous, and friends were consulted; assertions made by the defendants of their mother's incapacity for the causes stated, and by the plaintiff and her sister to the contrary. The agreement for settlement, whereby the brothers were to receive $8,000 of the estate, was made, and in the following month of March, after the will was proven without opposition, and letters testamentary issued, the mortgages in question were assigned by the executors, to the defendants, in execution of the agreement, and in the following month of December, the plaintiff instituted this action. The plaintiff and Mr. Lowry, who appears to have been the family solicitor, were the executors.

The brother, Charles, was at one time the plaintiff's guardian; he had an accounting and release in the surrogate's office about the 4th of November, 1871; before this will was made, and thereafter and until June, 1872, he took charge of the plaintiff's affairs as an agent, and then she testifies she discharged him. The following extract from her testimony indicates that she knew as much of her mother's condition and of the physician's opinion as any one:

"Q. You knew a will was drawn? A. I supposed it was drawn that afternoon, but I did not see it, and could not say if it was a will. I was not with her myself.

"Q. Were you in the room when your mother signed the instrument? A. I was.

"Q. Did you see any of the witnesses sign any instrument? A. Yes.

"Q. Was she perfectly sound in mind? A. I know nothing about that except what the physician told me from time to time."

The other sister says she and the plaintiff and Mr. Marcellus were present, and she knew it was a will.

We think, upon a review of the whole case, that the settlement was made for family reasons and for peace. The assertion of the plaintiff that she was induced to agree to a settlement already voluntarily agreed to by her sister, by reason of any false statement

Bedell v. Bedell.

made by the defendants, is not sustained. The judge at special term says she discussed the matter with her sister and Mr. Lowry, and deliberately made the assignment; that she did not act in haste and was influenced by a meritorious wish to promote family harmony.

There is another view of this case, however, which, upon the law, bars a recovery; the defendants have foregone and lost their right to contest the will, and the plaintiff cannot restore them to the position they had before the will was proven.

The plaintiff, by an agreement of settlement, procured the defendants to withdraw their intended opposition to the probate of the will, and thereupon it was proven and established. After this the agreement was carried out by the execution of the assignments of mortgages in question. Plaintiff has the benefits conferred and the estate bequeathed by the will. If the defendants are now to give up what they received under this agreement, it should be on condition that their right to oppose the will be restored to them, but this cannot be.

The agreement was valid, and whether they would have succeeded in the litigation is not the test. *Seaman* v. *Seaman*, 12 Wend. 381. If the members of a family settle among themselves the dispute which may arise touching an inofficious will which is about to be contested and litigated, the settlement ought to be final when its conditions are fully performed.

If a contract is sought to be rescinded for fraud, the party claiming rescission must restore, or offer to restore, that which he has gained by reason of the contract before he can claim its rescission. *Sinclair* v. *Neill*, 3 N. Y. Sup. 74; *Cobb* v. *Hatfield*, 46 N. Y. 533; *Hogan* v. *Weyer*, 5 Hill, 389. And if there can be no restoration, there can be no rescission. *Pullman* v. *Alley*, 53 N. Y. 607.

The judgment should be reversed and a new trial granted at special term, costs to abide event.

BARNARD, P. J., dissenting. The defendant obtained from the plaintiff a transfer of $8,000 on mortgages by virtue of an allegation that they intended to contest a will which the mother of all the parties had made in favor of plaintiff and her sister; that such contest was to be based on the insanity of the mother at the date of the execution of the will, and that they, the defendants, had been told by the family physician that testatrix was insane at

that time. The testatrix was not insane, and the doctor had not said she was. The transfer was made. No objections to the probate were filed, and the will was proven. The plaintiff, since the probate, has discovered the falsehood asserted, and seeks to recover back her property as having been procured by fraud. Two objections are made to her recovery.

The first is that the finding of the court below should be reversed as against evidence.

There was but one witness sworn as to the allegation made by the defendant as to what the doctor had said about the insanity of the testatrix, and that was the plaintiff. Neither defendant was sworn. It is admitted by the answer that the defendants did allege insanity as the basis of their proposed contest, but neither defendant denied having told plaintiff that the doctor had said to them or one of them, that she was insane. In the absence of such denial, I do not see how an appellate court could disturb a finding.

The second objection is, assuming the false statement, that the will having been admitted to probate, it is not now possible to reinstate the parties in the position they were in before the transfer, and that therefore plaintiff must fail.

The principle is well settled where property is acquired by fraud, the party seeking to recover back the fraudulently-acquired property, must give up all benefits of the bargain. In this case, under the evidence, the plaintiff has obtained nothing. The testatrix was not insane, and the doctor never said she was. The contest threatened, was itself a pretense based upon falsehood.

The judgment should be affirmed, with costs.

*Judgment reversed and new trial ordered.*